## NOBLES v. HOGG.

1. TRUSTEE—DISCHARGE—PRESUMPTIONS.—A trustee can be discharged from the trust after his acceptance only (1) by the consent of the *cestui que trust ;* (2) by the provisions of the instrument creating the trust; or (3) by decree of a Court of Chancery. Lapse of time raises no presumption of discharge and affords no barrier to an accountability, especially where the trustee has made no returns, and admits that he has made no payments for over thirty-five years.

2. IBID.—IBID.—IBID.—The lapse of twenty years raises a presumption of payment of interest due by a trustee to his *cestui que trust,* a life tenant, but such presumption is a presumption of fact and as such rebuttable, and was rebutted in this case by the sworn admission of the trustee at the trial.

3. IBID.—LIMITATION OF ACTIONS.—In the absence of any showing that the trustee denied his liability to the *cestui que trust* for life for the interest annually due to her on the trust fund in his hands, or that she knew of any adverse claim thereto by him, the statute of limitations affords no defence to the trustee for the interest so due.

4. COMMISSION TO TAKE TESTIMONY—WAIVER.—Where a commission was read without objection at the trial, it is too late on appeal to raise the objection that the commissioners were not sworn.

5. HUSBAND AND WIFE.—The rights of a *cestui que trust* who acquires her interests under the terms of a will are not affected by the improper removal from the State by her husband of chattels belonging to testator's estate.

6. ORDERS ON CALL OF CALENDAR.—The absence of an attorney from the court room, when the Circuit Judge confirmed in open court a report of the master, which merely made a statement of indebtedness in accordance with the directions of a decree previously rendered at the same term, furnishes no ground for exception.

7. TRUSTEE—CORPUS.—Under a complaint by a *cestui que trust* for life against her trustee, seeking the payment of annual interest past due and hereafter accruing, and making no allegations looking to the removal of the trustee, there should be no judgment against the trustee for the *corpus* of the trust estate.

8. INVESTMENT OF TRUST FUNDS.—A trustee held responsible for money

of the trust estate lent to his brother without surety or other security, the borrower dying more than a year before the war and no effort made to recover the debt.

Before IZLAR, J., Barnwell, March, 1891.

This was an action by Mary A. Nobles against George M. Hogg. One of the defences relied upon was that the defendant had carried away from the State in 1850 a number of negro slaves belonging to the estate of John Hogg, deceased, but the testimony showed that these slaves were taken off by plaintiff's husband, plaintiff following her husband about a month afterwards. Otherwise the case is fully stated in the Circuit decree, which was as follows:

. This action was brought for the purpose of procuring an accounting between the plaintiff and defendant, who was the trustee appointed for her under the will of her father, the late John Hogg. It is shown by the testimony in the case, that said John Hogg departed this life in the year 1846, and that his said will was admitted to probate upon the 20th day of June, A. D. 1846; that by said will Thomas F. Hogg and the defendant, Geo. M. Hogg, were appointed executors of said estate and also trustees of the plaintiff, but that Thomas F. Hogg never qualified as such executor, nor did he ever assume the trusteeship of the plaintiff; that upon the 15th day of July, A. D. 1846, the defendant, Geo. M. Hogg, duly qualified as the executor of said estate, and at the same time assumed the responsibility of the said trust, and entered upon the discharge of the respective duties imposed upon him by virtue thereof; that as such trustee he, among other things, received from Johnson Hagood, Esq., commissioner in equity for said county, upon behalf of the plaintiff, his *cestui que trust*, the sum of six hundred and thirty-eight and 20–100 dollars upon the first day of June, A. D. 1854, the said amount being for distributive share arising from the sale by said commissioner of testator's land in Beaufort County, said estate known and described in said will as the Hogg Neck place; that he also, upon the 17th day of August, A. D. 1854, received from said commissioner, upon plaintiff's behalf, the further sum of one hundred and thirty-four and 89–100 dollars, being for distribu-

tive share arising from the sale of two thirds ($\frac{2}{3}$) of the land in Barnwell County, known as the Fiddle Pond tract; that under said will the remaining one-third of the said Fiddle Pond tract was devised by testator to his widow. one Mary Hogg, for her life, and at her death to go to testator's children which were born to him whilst married to said Mary Hogg, being eight in number, one of whom is the plaintiff; that said Mary Hogg departed this life upon the 15th of April, A. D. 1869, and the rights of the above mentioned children then accrued to the remainder, none of the benefits of which have ever been enjoyed by the plaintiff, the defendant having it in his possession; that the defendant loaned the money received by him from the commissioner in equity, as above set forth, in behalf of plaintiff, to his brother, one J. R. Hogg, taking as the only security therefor the borrower's note; that said note was never paid, nor does the testimony show that any attempt even was ever made to collect same by defendant; that defendant had never paid over to plaintiff any of said sums, nor had he in any respect accounted to her for the same, or any part of her interest under said will; that he had never renounced his trust, nor committed any act indicative of his intention to renounce or throw off the same; but, on the contrary, it is plain that he has never ceased to be the plaintiff's trustee.

Upon the foreging statement of the testimony, I conclude as matters of fact: 1. That the plaintiff has never received the sums due her by her trustee, the defendant herein, that came into his hands as such trustee for her benefit. 2. That he has never in any manner accounted to her as such trustee. 3. That the testimony shows no act on the part of said trustee purporting to be a determination of his trust or intention to renounce the same, which would give a starting point to the statute of limitation. 4. That the defendant, as such trustee, is due the plaintiff the sum of six hundred and thirty-eight and 20–100 dollars, with interest from June the 1st, A. D. 1854, to date; and the sum of one hundred and thirty-four and 89–100 dollars, with interest from seventh of August, A. D. 1854, less his commissions of five per cent., which he is allowed under this decree.

Upon the foregoing facts I find as matter of law: 1. That plaintiff's action is not barred by the statute of limitations. That

defendant cannot avail himself of having loaned the said money, for it was his duty to have taken some security for it; and the courts of this State have never authorized the investing of trust funds upon the faith and security of the borrower's simple note. That the doctrine of presumption of payment does not arise in this case, inasmuch as this presumption can be rebutted, and it is very clear that it has been in this action. The plaintiff is entitled to an accounting with defendant for her proportionate share of the rents and profits arising from the use and occupation by defendant of the balance one-third of said Fiddle Pond tract after the decease of the said Mary Hogg, the wife of testator.

It is therefore ordered, adjudged, and decreed, that the master for said county do ascertain and report forthwith the amount due of principal and interest upon the two sums above set forth, less the commissions of 5 per cent. due defendant. Further ordered, that the master do have an accounting between the parties hereto, and ascertain and report what amount, if any, be due plaintiff for the rents and profits of said one third of said Fiddle Pond tract. That the plaintiff have judgment for the costs.

The master, in obedience to the above decree, filed his report, in which he found that the defendant is indebted to the plaintiff in the sum set forth in the said report, and the presiding judge confirmed the same, without any notice to defendant's attorney that said reference had been held, or that said report had been filed, and judgment has been entered for the said principal sum so found, together with costs. The amount reported by the master to be due was $2,623.09, it being principal and interest, less commissions. This report was confirmed in open court.

The defendant appealed on the grounds stated in the opinion of this court.

*Mr. Jas. E. Davis*, for appellant.

*Messrs. Bates & Simms*, contra.

April 30, 1892. The opinion of the court was delivered by MR. JUSTICE POPE. John Hogg died in 1846. He left a

will. By its provisions a life estate in certain property was given to his daughter, Mary A. Nobles; and the same was confided to testator's son, the defendant, as her trustee. In 1854 (June 1), he received for his *cestui que trust* $638.20, and on 7 June of the same year he received for her $134.89. Plaintiff had removed prior to that time to the State of Texas, along with her husband and children. Defendant as trustee never paid his *cestui que trust* any interest on the sums received by him as of her estate. Within the last year or so, this action was commenced for the purpose of procuring an accounting from such trustee, and thereafter for a judgment against defendant. Testimony was taken by the master for Barnwell County. The action came on to be heard before Judge Izlar upon the pleadings and testimony. The Circuit decree was in favor of plaintiff for $2,623.09.

An appeal is brought by the defendant therefrom on seven grounds, as follows: 1. Because his honor erred in holding that the presumption of payment had been removed, and that under the plea of lapse of time said defence could not prevail. 2. In that his honor erred in overruling the defence of the statute of limitations. 3. For that his honor erred in admitting the testimony of the plaintiff taken by commission, for, that it is respectfully submitted, that the commissioners were not sworn. 4. Because his honor erred in holding that the defendant was liable to account to the plaintiff, whereas the evidence shows that the plaintiff took from the possession of the defendant, her trustee, several negro slaves, whose value far exceeded the share of the plaintiff in said estate, and in refusing to require the plaintiff to account to the defendants for the same. 5. In that his honor erred in confirming the findings of the master, the defendant having no notice whatever of said reference, and no opportunity whatever of surcharging the plaintiff's account, the plaintiff's attorney having written out the report on the same day of the final hearing of the cause, the master signing the same without the defendant's knowledge, and his honor confirming it, inflicting upon defendant an injustice, for which he respectfully submits there is no precedent in law. 6. Because the record clearly shows that the defendant is not legally liable to the plaintiff upon the cause of action set

forth in the complaint.  7. For that his honor erred in ruling that the plaintiff (defendant) was guilty of *laches* in not taking mortgage of real estate to secure the loans, and in ruling that the defendant could not show that the custom of the country at that time was to take notes from solvent parties, and that in holding that taking said notes was not a compliance with the law, his honor also erred.

1. If the appellant, by his first ground of appeal, seeks a decision from this court as to the discharge of a trustee from his office by the lapse of twenty years' time, thereby creating a presumption to that effect, the decision of such question will be adverse to such position.  Here the defendant accepted a trust which, by the very instrument creating the same it was expressly provided, should continue through the life time of the plaintiff, so that at her death her children should receive the trust property placed in defendant's hands by the will of John Hogg.  As this court had occasion to announce in the case of *Durant, trustee,* v. *Durant, ante* 49, decision at the present term, there are only three ways by which a trustee, once appointed and who has accepted his appointment, can be discharged from his office, viz.: 1. By the consent of the *cestui que trust.*  2. By the provisions therefor in the instrument creating the trust.  3. By the decree of the Court of Chancery.  There is no claim that there has been any compliance with any one of these conditions in this case.  Lapse of time, say twenty years, is no barrier to an accountability by such trustee.  Indeed, the length of time of the continuance of this office furnishes an additional reason why all of the actings and doings of such officer should pass in stern but just review in a Court of Chancery, especially when, as in this case, no returns have ever been made by the trustee, and by his admission not a dollar paid to his *cestui que trust,* or for her benefit, since the year 1854 up to this time.

But, on the other hand, if it is desired that this court should decide the question as to the effect of the lapse of more than twenty years since the liability to pay interest to a life tenant on a fund in the hands of her trustee, when upon an accounting such trustee claims the benefit of the pre-

sumption of payment arising from such lapse of time, we will say that this court has decided that such lapse of time raises a presumption of fact that such payment has been made, but that such presumption is rebuttable. *Boyce* v. *Lake*, 17 S. C., 489; *Strickland* v. *Bridges*, 21 *Id.*, 26. In the case of *Boyce* v. *Lake*, *supra*, this court said: "Our conclusion is that the lapse of twenty years raises a presumption of payment as to sealed notes and bonds which, though not a presumption of law and therefore not conclusive, yet is a presumption of fact which has acquired an artificial force—subject to be rebutted, it is true; but the facts relied on for this rebuttal must be stronger than mere belief, deduced from the weight of testimony being on that side." This court is still satisfied with such enunciation of the law as to presumptions arising from the lapse of twenty years. In the case at bar, the trustee on oath admits that he has not paid his *cestui que trust* any interest whatever from 1854 up to the present time. Here is his testimony from the "Case": "State to the court if you ever paid Mrs. Nobles anything in any way, shape, or form?" Answer, "Never have." We cannot hold, in view of this solemn admission from the trustee that the presumption in question can arise in this case; it is rebutted by this solemn admission.

As to the defence of the statute of limitations. In this case, from the year 1854 no interest had been paid by the trustee to the plaintiff, who was entitled to receive interest annually during her life on the funds held by him as such trustee. Unquestionably at the commencement of a new year interest for the preceding year might have been sued for by the plaintiff, and in ordinary cases without any trust features connected therewith, the statute of limitations would begin to run; but not so in cases of trust, for here the trustee holds the interest for his *cestui que trust*. It becomes necessary, therefore, that the nonpayment of the interest yearly must be accompanied, in order to enable the trustee to plead the statute, with some act or declaration of the trustee touching his duty to his *cestui que trust*, whereby he plainly manifests his purpose to place her at defiance by refusing to pay interest. This view is sustained by Perry on Trusts, at sections 863 and 864. Section 863 provides: "As

between trustee and *cestui que trust*, in the case of an express trust, the statute of limitations has no application, and no length of time is a bar," &c. Section 864 states, "To enable a trustee, without giving up the possession, to turn it into an adverse holding against the *cestui que trust*, the evidence must be clear and unmistakable, and such adverse claim must be brought home to the *cestui que trust* beyond question or doubt. The attitude of the trustee must be hostile and continuously so; and there must be no mistake or misapprehension as to the character of his holding by either party." In this case, as before remarked in another connection, the trustee admits he has not paid the interest, but nowhere introduces proof as to any adverse holding. Indeed, it does not appear that his *cestui que trust* was ever informed that he held the moneys collected by him in 1854. As Mr. Perry, in his work on Trusts, in section 863, states: "The mere fact that money due the *cestui* is allowed by him to remain in the trustee's hands, does not change the nature of the debt; it continues to be a trust debt, upon which neither bankruptcy of the trustee nor the statute of limitations can take effect. Accounts have been decreed against trustees, extending over periods of thirty, forty, and even fifty years." We must therefore overrule this ground of appeal.

4. We fail to see any merit in the third and fourth grounds of appeal. No objection was taken to the commission at the hearing. As to the charge by appellant that certain slaves were carried by plaintiff's husband contrary to his duty to the defendant as executor, surely the wife cannot be blamed on that account.

5. Nor has the defendant impressed us by the matters complained of in the fifth ground of appeal. The facts are, that the Circuit Judge had made his decree settling the plaintiff's right to interest on a certain sum of money that came into the defendant's hands at a specified date, and that defendant should be allowed commissions thereon before paying over. The Circuit Judge merely used the master to compute such interest and allowance of commissions. He might have called upon any one expert in calculations for this purpose. It was virtually his own act. Besides, if the defendant's attorney wished to be pres-

ent when this matter was considered by the Circuit Judge, he should have remained in court for that purpose. The court room is the place for attorneys when the Circuit Judge is dispatching the business of suitors whose causes appear upon the calendars of the court; and this court will hesitate long before interfering with orders passed by trial judges, upon the ground of the absence of attorneys from the court room when such orders were passed. If any injury is wrought thereby, it can and will be very readily remedied upon an application to the Circuit Judge.

6. The matter of complaint embodied in the sixth exception is not without embarrassment. The plaintiff here did not in her complaint make any allegations of fact looking to the removal of the trustee from his office as trustee; on the contrary, she contented herself, after allegations in justification of such a course, with a prayer that he should account for all properties that came into his hands as her trustee, and that thereafter he be ordered to pay over to her such amount as should be ascertained to be due her. Now she was not entitled to receive the *corpus;* her rights in the trust property were limited to the income therefrom. The judgment of the Circuit Court should have been limited to that relief. We find, however, that in his judgment or decree he included *corpus* as well as interest. This was error and must be corrected,

As to the seventh exception. After a careful consideration, we must overrule it. The trustee loaned the money of the trust estate to his brother without any surety to the note or any security therefor. By the testimony of this defendant, the brother died in 1859. In 1860 he could have sued. That was before the war. He showed no diligence on his part to collect the note. Besides, it is only in extreme cases that this court will ever lend its sanction to any such investment of trust property. We would rather state the rule as to such investments as contrary to approval of the loan of money on the note of an individual, without either a surety or some security.

It is the judgment of this court, that the judgment of the Circuit Court be modified in accordance with the principles herein announced, and that the cause be remanded to the Circuit Court for that purpose.